**SIGNED THIS: October 26, 2005**

                                              _/s/ Mary P. Gorman_
                                              **MARY P. GORMAN**
                                **UNITED STATES BANKRUPTCY JUDGE**

___

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re | ) |
| | ) In Bankruptcy |
| DEBORAH BRAMHALL, | ) |
| | ) Case No. 05-70872 |
|        Debtor. | ) |
| _____ | ) |
| | ) |
| JEFFREY D. RICHARDSON, | ) |
|   Chapter 7 Trustee, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | ) Adversary No. 05-7087 |
| | ) |
| DEBORAH BRAMHALL, | ) |
| | ) |
|        Defendant. | ) |

# O P I N I O N

The issue before the Court is whether the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) for concealing her ownership of a 1995 Rinker boat and a 1996 Sea Doo water craft and the pre-petition transfer of the Rinker boat.

This adversary proceeding was called for trial on October 6, 2005. The Trustee, Jeffrey D. Richardson, appeared ready for trial. The Debtor, Deborah Bramhall, did not appear. The Debtor's attorney, Brian Finney, appeared, but he was unable to offer an explanation for the Debtor's failure to appear. The Trustee, without objection from Mr. Finney, submitted the deposition testimony of the Debtor, her boyfriend Chris Doyle, and an employee from Mr. Finney's office, Barbara Meridith. The Court took the matter under advisement.

In July, 2003, Mr. Doyle agreed to purchase a 1995 Rinker boat from Charles Hall. On July 29, 2003, Mr. Doyle issued an $8,000 check to Mr. Hall and, in return, received a handwritten Bill of Sale for the boat. Despite the purchase, Mr. Doyle did not register the boat in his name. Believing that previous DUI convictions which resulted in the loss of his Illinois driving privileges prohibited him from registering a boat in his name, Mr. Doyle registered the boat in the name of his girlfriend, Deborah Bramhall.

When Ms. Bramhall decided in late 2004 to file bankruptcy, she was concerned about having the boat in her name. Therefore, she transferred the boat to Mr. Doyle in early 2005.

Ms. Bramhall filed a petition pursuant to Chapter 7 of the Bankruptcy Code on February 28, 2005. Paragraph 10 of the Statement of Financial Affairs requires a debtor to list all transfers of property within one year of the bankruptcy filing. The Debtor did not list the transfer of the Rinker boat. Paragraph

24 of Schedule B requires a debtor to list "boats, motors, and accessories". The Debtor did not list the Rinker boat or the Sea Doo water craft. A meeting of creditors pursuant to 11 U.S.C. § 341 was set for April 12, 2005.

On April 12, 2005, the Debtor filed an Amended Schedule B which showed her ownership interest in a 1996 Sea Doo water craft.

Prior to the meeting of creditors, the Trustee ran a Westlaw search for motor vehicles and water craft. Through this method, the Trustee discovered the Debtor's ownership interest in the Rinker boat and Sea Doo water craft. The Debtor did not volunteer information about these items at the meeting of creditors, but she admitted ownership of the Rinker and Sea Doo and the transfer of the Rinker after being confronted by the Trustee.

The Trustee filed an adversary complaint objecting to the discharge of the Debtor based on her nondisclosure of her ownership of the Rinker boat and Sea Doo water craft and the pre-petition transfer of the Rinker boat to her boyfriend, Mr. Doyle. The Trustee did not specify which subsection of § 727 that he was proceeding under, but the allegations appear to fall within the ambit of § 727(a)(2)(A).

A discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. In re Garman, 643 F.2d 1252, 1257 (7th Cir. 1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d

333 (1981). However, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly construed against objectors in order to grant debtors a fresh start. In re Johnson, 98 B.R. 359, 364 (Bankr. N.D. Ill. 1988) (citation omitted). Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt nondischargeable. *See* Johnson, *supra*, 98 B.R. *at* 367 ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.") (citation omitted). The plaintiff has the burden of proving the objection. *See* Fed.R.Bankr.P. 4005; In re Martin, 698 F.2d 883, 887 (7th Cir. 1983) (the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff). The objector must establish all elements by a preponderance of the evidence. In re Scott, 172 F.3d 959, 966-67 (7th Cir. 1999).

Pursuant to 11 U.S.C. § 727(a)(2)(A), a court will grant a debtor a discharge unless the plaintiff can prove by a preponderance of the evidence that the debtor:

> (2) with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed --
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

Denial of discharge under this section requires proof of actual intent to hinder, delay, or defraud a creditor. In re

-4-

Snyder, 152 F.3d 596, 601 (7th Cir. 1998); In re Krehl, 86 F.3d 737, 743 (7th Cir. 1996); In re Smiley, 864 F.2d 562, 566 (7th Cir. 1989). "[P]roof of harm is not a required element of a cause of action under Section 727." Id. *at* 569. In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's "whole pattern of conduct." In re Ratner, 132 B.R. 728, 731 (N.D. Ill. 1991) (*quoting* In re Reed, 700 F.2d 986 (5th Cir. 1983)). The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *See* Smiley, *supra*, 864 F.2d *at* 566. Actual fraudulent intent can be inferred from extrinsic evidence. Id.; Krehl, *supra*, 86 F.3d *at* 743; In re White, 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986) ("a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case"). "Thus, where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." Krehl, *supra*, 86 F.3d *at* 744 (citation omitted). "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) (citations omitted).

In order to prevail against a debtor on a § 727(a)(2)(A) claim, a plaintiff must prove two things: (a) the debtor transferred, removed, destroyed, mutilated, or concealed property

and, if proven, (b) that the debtor had an intent to hinder, delay, or defraud his creditors.

While the denial of the discharge is a harsh result, the Court cannot overlook a willful intent to conceal assets of the estate from the Trustee.  The Debtor admitted the purpose of the transfer of the Rinker boat to Mr. Doyle was to get it out of her name before she filed bankruptcy.  She intentionally failed to disclose the transfer of the Rinker to Mr. Doyle.  The Debtor also failed to offer a credible explanation for her failure to include the Sea Doo in her original schedules.  She thought it was listed with her debt to Heights, but Heights was only listed as an unsecured creditor.

The Debtor testified at her deposition that she told Barbara Meridith of Mr. Finney's office about the Rinker and Ms. Meridith advised her to transfer the boat.  This testimony was not credible.  Ms. Meridith, who has worked for Mr. Finney for 11 years, specifically denied advising the Debtor to get the boat out of her name.  Even if the Debtor received such advice, this would not explain her failure to disclose the transfer on her Statement of Affairs or at her first meeting.

The Debtor's explanation that she did not schedule an interest in the Rinker boat because it belonged to Mr. Doyle is without merit.  The Debtor knew she had an interest in the boat, and that is why she transferred it to Mr. Doyle before the bankruptcy. Moreover, assets in which a debtor has an interest must be disclosed on the debtor's schedules even if the debtor believes another person or entity may have an equitable right to the asset.

<u>In re Braun</u>, 98 B.R. 382 (Bankr. N.D. Ill. 1989).

For the foregoing reasons, the Court finds that the Trustee has met his burden of proof and that the discharge of Deborah Bramhall should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###